In re WORMSER'S ESTATE.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

1. PARTNERSHIP—JOINT PROPERTY—SURVIVORSHIP.
    Where a partnership agreement provided that one-half of the assets belonged to each partner, and they subsequently agreed that they jointly owned property, some of which appeared in the individual name of one of them, and that all property previously held or thereafter acquired, either in the joint or individual name of either of them, was to be held jointly, the share of one of the partners did not pass at his death to the survivor, since the agreement subjected the property to the partnership relation during its existence only.

2. TAXATION—TRANSFER TAX—COMPROMISE OF CLAIMS—ALLOWANCE.
    On hearing before a transfer tax appraiser the only evidence to support a contention that the assets of a firm of which deceased was a member belonged to the survivor was an attorney's affidavit that the survivor and the heirs have been so advised. The surviving partner made no proof of such claim. There was no showing that he intended to insist upon it, and he had permitted the distribution of the whole estate among the heirs, none of whom acknowledged the claim. Held, that the appraiser's exemption of a sum from liability to the tax as an allowance for the compromise of the claim was error.

3. SAME—APPEAL—NOTICE OF APPEAL—REVIEW—SURROGATE'S COURT—JURISDICTION.
    The comptroller having failed to specify a deduction allowed by the transfer tax appraiser in his notice of appeal from the appraisement to the surrogate's court, the surrogate's action in disallowing such deduction was error, since such item was not before the surrogate for review.

4. SAME—TAXATION—PENALTY—REDUCTION.
    Where a surviving partner permitted distribution of the entire estate of his deceased partner, together with his interest in the firm assets, among decedent's heirs, and there was no evidence of an intention on his part to insist that under a partnership agreement he was entitled to decedent's interest in the partnership assets as surviving partner, the fact that an attorney made affidavit that the surviving partner was entitled to such assets, and that decedent's heirs had been so advised, was insufficient to authorize a remission of a penalty for nonpayment of a delinquent transfer tax imposed under Transfer Tax Law, § 223, authorizing such remission, where the delinquency occurs by reason of claims made on the estate, necessary litigation, or other unavoidable cause.

5. SAME—TRIAL—REOPENING CASE—DISCRETION.
    An application for permission to submit additional papers and affidavits to a surrogate, and to reopen a hearing on a proceeding to fix a transfer tax on decedent's estate, is within the surrogate's discretion.

Appeal from surrogate's court, New York county.

Proceeding for the assessment of transfer tax on the estate of Simon Wormser, deceased. From an order of the surrogate's court reversing

the assessment fixed by the appraiser, and fixing the tax, and from an order denying a motion to reduce the penalty for nonpayment thereof (59 N. Y. Supp. 1088), the comptroller and the next of kin appeal. Modified.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

F. R. Minrath, for appellants.
E. R. Olcott, for respondent.

PATTERSON, J. The children of Simon Wormser, deceased, appeal from an order of the surrogate of the county of New York, fixing a transfer tax upon their right of succession to the property of which their father died possessed, and from an order of said surrogate denying a motion made by them to remit a penalty, and for leave to reopen the matter after the surrogate had decided it, and to submit additional affidavits to him. Simon Wormser, a resident of the county of New York, died, intestate, on the 30th of July, 1895. Letters of administration upon his estate were not applied for until April, 1896. In March, 1897, a petition was presented by the proper authorities of the state of New York for the appointment of an appraiser under the provisions of the transfer tax act. An appraiser was appointed. He proceeded to perform the duty required of him, and in March, 1898, filed his report. Both parties appealed to the surrogate from that report. In disposing of these appeals, the surrogate made the decree from which the children of Simon Wormser alone now appeal. It is shown in the record that at the time of his death Simon Wormser had in his individual name personal property of the value of $734,274. He was then, and for many years had been, a member of the firm of I. & S. Wormser. The assets of that firm at the time of Simon Wormser's death were worth $4,805,890. In estimating the value of the estate of Simon Wormser the appraiser included the individual property mentioned, and one-half of the value of the firm assets; it being proven that Simon and Isidor Wormser were interested in those assets each to the extent of one-half. The appraiser deducted from Simon's one-half interest the sum of $250,-000, that being an allowance for a suggested compromise of an alleged but unproven claim of Isidor Wormser to the entire assets of the firm of I. & S. Wormser, a specific consideration of which claim will be made presently. He also deducted the sum of $923,205, the value, as he found it, of nontaxable securities in which that much of Simon Wormser's interest in the firm's assets was invested. He also deducted $150,000, that being allowed upon a claim against the firm of I. & S. Wormser, asserted by the Union Pacific Railway Company. On the appeal of the comptroller the surrogate disallowed the deduction of this item. The total amount of the taxable property of Simon Wormser, as found by the appraiser, after making the deductions above referred to, was $1,841,514, from which was also allowed a deduction of $25,000 for the expenses of administration, leaving a net taxable estate of $1,816,514. Simon Wormser left no widow. His next of kin were four sons, and the taxable share of

each son was found to be $454,128.50. By reason of the failure of the children of Simon Wormser to pay a transfer tax within the time required by section 223 of the transfer tax law, a penalty of 10 per cent. became chargeable upon the amount of the transfer tax fixed upon the distributive share of each of the four appellants. Upon the filing of the appraiser's report an application was made to the surrogate to remit the penalty as imposed, for a reason which will be adverted to hereafter. That application was denied by the surrogate, and the present appeals bring up for consideration, among other things, his action in that regard.

As far back as March 27, 1877, I. & S. Wormser, then being co-partners, entered into an agreement containing the following provision, viz.:

"That all the real and personal property, estate, and effects heretofore held or now or hereafter held in the joint name or individual name of either of them are held and owned by the said Simon Wormser and Isidor Wormser jointly, whether the same has been or is in their joint names or name or individual name of either of them."

There are five subjects presented for our consideration upon this appeal.

1. It is now urged that under the agreement of March 27, 1877, between Isidor and Simon Wormser, the entire property of the latter passed in ownership to the former as survivor, and that, as a consequence, there was no transfer tax imposed by law upon any right of succession to that property. The surrogate did not err in his construction of that agreement. There is nothing in its terms which necessarily leads to the conclusion that the survivor of the two brothers should become entitled to all the property of both in absolute ownership; but the reasonable interpretation is that the property held by each individually should be regarded as held in the same manner as if it were co-partnership property. The preamble of the agreement states the inducement to making that agreement, which is that Simon Wormser and Isidor had been for a long time past, and were then, jointly interested in both real and personal property, estate, or effects, some of which had appeared or appears in the individual name of one of them. The purpose of the agreement seems, therefore, to be plain, viz. that it was only the intention of the parties to bring such property as might then or thereafter be held in the joint name or the individual name of either of them into that joint ownership which is characteristic of a co-partnership relation. No implication can be made from this instrument that it was the intention of either of the parties to it that their respective children or families should be deprived of their inheritance. The co-partnership agreement between Simon and Isidor Wormser provided that the assets of the firm belonged one-half to each, and Isidor Wormser, Jr., testified that after the death of Simon Wormser the share of the assets of the firm of which he was a member and his individual assets were distributed among his children share and share alike. This property was so distributed as that of Simon Wormser, and the distribution must have been with

the consent of Isidor Wormser, for all the firm assets were under his control and in his possession as the surviving partner.

2. The surrogate was right in refusing to allow $250,000, or any amount, for the alleged claim of Isidor Wormser to the whole assets of the firm, by reason of his surviving his brother. The only evidence of the suggestion of such a claim is contained in the affidavit of an attorney at law that Isidor Wormser was advised that by the true construction of the agreement of 1877 he was entitled to claim as survivor, and that the children of Simon Wormser were also so advised. Isidor Wormser has not personally made proof of such a claim, or insisted on it, and there is nothing whatever in the record to show that he intended to assert or insist upon it. Nor does any member of the Wormser family acknowledge such a claim. The appraiser was not justified in making an allowance on account of a demand neither urged by Isidor Wormser nor admitted by the children of Simon Wormser. Isidor Wormser permitted the distribution of the whole estate among the children of his deceased brother as the property of that brother, whose right he did not dispute, but evidently acquiesced in. There was no proper evidence of the existence of the claim, and nothing upon which a deduction for it could be allowed.

3. Concerning the item of $150,000 deduction by reason of the Union Pacific Railway claim, the decision of the surrogate was erroneous. The determination of the appraiser in respect to that item was not before the surrogate for review on the appeal to him. The comptroller did not specify that item in his notice of appeal to the surrogate, and therefore that matter could not be made a subject of inquiry by him. In re Davis' Estate, 149 N. Y. 540, 44 N. E. 185.

4. As to the application for the remission of the penalty, we see no reason for differing with the surrogate as to the conclusion at which he arrived. The basis of an application for such a remission must be some sufficient cause arising by reason of claims made upon the estate, necessary litigation, or other unavoidable cause of delay preventing the payment of the tax. In the view we have taken of the matters hereinbefore referred to, we do not think it has been shown that any of the reasons required by the statute existed causing such a delay as would have justified the remission of the penalty.

5. The application to submit additional papers to the surrogate was denied in the reasonable exercise of his discretion.

The orders appealed from must be modified in accordance with the views expressed in this opinion, and, as modified, affirmed, without costs. All concur.